# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| ANTHONY OLIVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV420-273 |
| | ) | |
| AMERIS BANK, | ) | |
| CHEX SYSTEMS, INC., | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC., and | ) | |
| EQUIFAX INFORMATION | ) | |
| SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Quintessential to childhood are afternoons spent playing the boardgame Monopoly, which inevitably involves a player drawing the Community Chest card "Bank Error in Your Favor, Collect $200." A pleasant windfall on a lazy childhood afternoon, however, has become a federal case in Oliver's practiced hands. In doing so, he has continued the abusive practices for which he has become well known to this Court. Litigation is not a game and the Court remains unamused by Oliver's antics and conduct. It must now set itself to resolve a litany of pending motions and determine whether the filing restrictions previously

imposed on Oliver must be reimposed and if greater restrictions are warranted.

## BACKGROUND

A brief recitation of the procedural history of this case and Oliver's broader litigation history is necessary for context. Oliver has filed dozens of cases before the federal courts and has been repeatedly recognized as a vexatious litigant. *Oliver v. City of Pooler, et al.*, CV4:18-100, doc. 59 (S.D. Ga. Feb. 28, 2019) (recognizing Oliver as a vexatious litigant); *see also Oliver v. Luner*, CV2:18-2562, doc. 99 (C.D. Cal. Sep. 26, 2018); California Courts, List of Vexatious Litigants, *available at* https://www.courts.ca.gov/documents/vexlit.pdf (last visited July 1, 2021) (list of litigants deemed vexatious by the California courts containing Oliver's name). His abusive practices have resulted in this Court imposing restrictions on his ability to bring new cases, including the requirement that he post a $1,000 contempt bond. *See Oliver v. Lyft, Inc.*, CV4:19-063, doc. 115 (S.D. Ga. Oct. 21, 2019) (Order) *adopting* doc. 113 (S.D. Ga. Sep. 13, 2019) (Report and Recommendation); *Oliver v. Lyft, Inc.*, CV4:19-125, doc. 56 (S.D. Ga. Oct. 21, 2019) (Order) *adopting* doc. 54 (S.D. Ga. Sep. 13, 2019) (Report and Recommendation).

After the Court initially restricted his filing, Oliver was incarcerated. Lacking the ability to earn income during his incarceration, Oliver filed a motion to rescind the bond requirement, alleging that it effectively barred his access to the Court.[1] Doc. 22. The undersigned entered a Report and Recommendation, recommending that the contempt bond be suspended during the pendency of Oliver's incarceration, finding the requirements of the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (PLRA), to be an adequate deterrent to his prior vexatious conduct. Doc. 23. The only objection to the recommendation was filed by Ameris, which sought to ensure that Oliver would be subject to the requirements of 28 U.S.C. § 1915(g) in cases removed from state court.[2] Doc. 37. The Court adopted the Report and Recommendation and suspended the contempt bond for cases

[1] This motion was originally filed in two closed cases. *Oliver v. Lyft*, CV 419-063, 131 (S.D. Ga. Nov. 10, 2020); *Oliver v. Lyft, Inc.*, CV4:19-125, do. 71 (S.D. Ga. Nov. 10, 2020). As it would have no effect in the cases in which it was filed, the Court construed the motion to request relief in Oliver's then-pending cases. Doc. 23 at 3.

[2] 28 U.S.C. § 1915(g) bars an incarcerated plaintiff from bringing a case *in forma pauperis* when he has previously, "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

brought during Oliver's incarceration in which he proceeds *in forma pauperis*. Doc. 48 at 2. In all other cases, plaintiff is required to request a waiver of the contempt bond, supported by a sworn affidavit of his indigency. *Id.* at 2–3. The Court construed Ameris' objection as a request for clarification and refrained from resolving the question, expressly noting that it understood Oliver to not have accumulated prior strikes under § 1915(g). *See* doc. 48.

When plaintiff failed to move for waiver of the contempt bond within sixty days of the Court's Order, the undersigned entered a second Report and Recommendation, recommending that the case be dismissed. Doc. 54. After the period for objections to the Report and Recommendation had closed, Oliver filed a motion for either a stay of the case or 45-day extension of an undefined deadline in order to obtain and submit his inmate trust account statement and affidavit required to support his waiver request. Doc. 58. An affidavit requesting waiver and the prisoner trust account statement were received by the Court the following day.[3] Doc. 59; doc. 60. Oliver later filed an untimely objection

---

[3] As the prisoner trust account statement and affidavit of indigency have been received, Oliver's motion to stay or for an extension of time is **DENIED as moot**. Doc. 58.

to the Report and Recommendation, in which he claimed that his considerable delay in filing the affidavit and prisoner trust account was due to being placed in quarantine after testing positive for COVID-19.[4] Doc. 64. On May 26, 2021, more than four months after the Court amended the filing restrictions, Oliver filed a motion requesting the waiver of the contempt bond. Doc. 70.

Oliver, while incarcerated, filed his original Complaint in the Superior Court of Chatham County, Georgia. Doc. 4 at 17–24. While the case was pending before the state court, plaintiff filed at least one Amended Complaint. *Id*. at 66–80. On November 5, 2020, the case was removed to this Court by Experian Information Solutions, Inc. (Experian). Doc. 1. Since the case was removed, defendants Geovista Credit Union (Geovista) and TransUnion, LLC (TransUnion) have reached settlement with Oliver and have been voluntarily dismissed. Doc. 45 (Order); *see also* doc. 29 (Stipulation of Dismissal); doc. 49 (Order) *adopting* doc. 46 (Stipulation of Dismissal). Stipulations of dismissal

---

[4] As Oliver has filed the necessary documents, the Court **VACATES** its March 15, 2021, Report and Recommendation. Doc. 54.

have also been filed for Experian and Chex Systems, Inc. (Chex). Doc. 53 & 55.

Defendant Ameris Bank (Ameris) filed two motions to dismiss based on Oliver's failure to state a claim on which relief could be granted and, alternatively, for failure to perfect service. Doc. 10 & 30. Following Oliver providing proof of service, these motions were withdrawn. Doc. 33. Oliver subsequently filed a motion to strike one of the motions to dismiss and a motion for sanctions against Ameris, its counsel, and its employee, alleging that the motion to dismiss constituted a misrepresentation to the Court. Doc. 41 & 66. He also filed a notice of voluntary dismissal of his claims against Ameris. Doc. 74.

## DISCUSSION

I.    **Pending Motions**

   **A. Motion to strike responsive pleadings and for entry of default judgment**

On November 12, 2020, Ameris filed a motion to dismiss the claims asserted against it on the basis that plaintiff's pleadings fail to state a claim on which relief can be granted. Doc. 10. The motion noted that, though the 90-day period for service had not then elapsed since removal,

plaintiff had yet to effect service and that such deficiency, if not corrected, would provide an alternative ground for dismissal.  *Id.* at  1 & 9.  On December 4, 2020, Ameris filed a renewed motion to dismiss, alleging as the primary ground for dismissal plaintiff's failure to serve the Complaint when originally filed before the Chatham County Superior Court.  Doc. 30.  On December 8, 2020, in response to the motions to dismiss, plaintiff provided a copy of a proof of service executed by a Gwinnett County Sheriff's Deputy, evidencing that service was effected on Ameris' registered agent.  Doc. 33 at 5 & 9.  One week later, Ameris withdrew its motions to dismiss.  Doc. 38.  After the withdrawal, plaintiff filed a motion to strike Ameris' pleadings and for entry of a default judgment, alleging that Ameris' claim that service was not perfected was fraudulent and perjurious.  Doc. 41.

Plaintiff's motion mixes and conflates multiple theories of relief. The motion to strike travels under Federal Rule of Civil Procedure 12(f), which allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f) (emphasis added).   Pleadings are limited to: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim

designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). The motion is ambiguous as to what filing plaintiff seeks to have stricken. Though it is titled "motion to strike defendant Ameris Bank's response pleading," it expressly states that "the Court should strike the declaration of John Exum." Doc. 41 at 1 & 3. As the objected-to statements are included in Ameris' motions to dismiss, and not its Answer, the Court must presume that plaintiff seeks to have the motion to dismiss and supporting declaration stricken. Neither of these filings qualifies as a "pleading" as defined by Federal Rule of Civil Procedure 7(a), so Rule 12(f) does not apply. *See, e.g., Harrison v. Belk, Inc.*, 748 F. App'x 936, 940 (11th Cir. 2018) ("[A] motion for summary judgment is no 'pleading' and, thus, may not be attacked by a motion to strike under Fed. R. Civ. P. 12(f)." (citation omitted)); *Reed v. City of Memphis, Tenn.*, 735 F. App'x 192, 197 (6th Cir. 2018) (observing that affidavits "are not pleadings subject to motions to strike under Rule 12(f)"). Furthermore, as plaintiff has withdrawn the motions, the motion to strike is moot. Doc. 38. Therefore, to the extent

that plaintiff seeks to have plaintiff's motions to dismiss stricken, the motion is **DENIED**.  Doc. 41.

### B. Motion for service and motion to transfer venue

Plaintiff has filed a motion for service of his pleadings on defendants by the United States Marshals Service.  Doc. 19.  He has also filed a motion seeking the transfer of this case to the Middle District of Georgia.  Doc. 39.  He subsequently filed multiple notices of withdrawal of both motions.   Doc. 63; doc. 69; doc. 73.   The motions are **WITHDRAWN** and the Clerk of Court is **DIRECTED** to **TERMINATE** the motions.  Doc. 19; doc. 39.

### C. Motions to amend

Plaintiff has sought to amend his Complaint multiple times.  The First Amended Complaint was filed on November 20, 2020, shortly after the case was removed to this Court.  Doc. 18.  This constituted the single amendment permitted as a matter of course under the Federal Rules and did not require leave of the Court.  Fed. R. Civ. P. 15(a)(1).  Less than a month later, plaintiff filed a motion for leave to file a second amended complaint.  Doc. 40. Thereafter, he filed a motion to withdraw his First Amended Complaint and requested leave to file an Amended First

Amended Complaint.  Doc. 52.  The Court is obligated to freely give leave to amend when justice so requires.  Fed. R. Civ. P. 15(a)(2).  However, as this case will be resolved through the Court's recommended sanctions or Oliver's attempted dismissal, the pending motions to amend should be **DENIED** as moot.  Doc. 40; doc. 52.

### D. Motion to stay

Ameris, Chex, and Experian filed a motion to stay this case pending resolution of whether plaintiff is required to post a contempt bond.  Doc. 42.  Plaintiff filed a response, objecting to the stay.  Doc. 47.  As the matter of plaintiff's contempt bond is resolved in this Order and Report and Recommendation, the motion is **DENIED as moot**.  Doc. 42.

## II.   Filing Restrictions

Oliver has filed a motion seeking to vacate his pre-filing conditions and contempt bond.  Doc. 70.  The Court construes this as a motion to waive the contempt bond in accordance with its prior Order.  *See* doc. 48 (permitting waiver of the contempt bond during Oliver's incarceration).  He has previously filed with the Court an affidavit of indigency and his prisoner trust account statement.  Doc. 59; doc. 60.  Ameris has raised questions regarding the accuracy of the financial picture presented by

Oliver's filings. Doc. 62 at 3–4. The Court need not wade into an accounting analysis as Oliver's continued abusive conduct in this litigation evidences not only the need for the bond requirement to remain in place but also for more significant steps.

Oliver's recent filings in this case are a reiteration of the tactics that he has previously used to harass opposing parties in prior cases. This includes the filing of frivolous motions for sanctions, disqualifications, and the striking of pleadings. *Compare* docs. 41 (Motion to Strike) & 66 (Motion for Sanctions), *with Oliver v. Lyft, Inc.*, CV4:19-063, doc. 73 (S.D. Ga. Feb. 25, 2019) (motion seeking the disqualification and sanction of defense counsel for seeking a "tactical advantage" in contacting Oliver's potential witnesses); *Oliver v. Lyft, Inc.*, CV4:19-063, doc. 59 (S.D. Ga. Feb. 13, 2019) (motion for sanctions against counsel for filing a motion to transfer that was ultimately granted); *Oliver v. Cnty. Of Chatham, et al.*, CV4:17-101, doc. 64 (S.D. Ga. Sep. 25, 2017) (motion for sanctions for defendants seeking to have Oliver deemed a vexatious litigant); *Oliver v. Cnty. Of Chatham, et al.*, CV4:17-101, doc. 35 (S.D. Ga. Jul. 27, 2017) (motion for sanctions alleging that defendants failed to mail copies of pleadings to Oliver); *Oliver v. Lyft., Inc.*, CV3:18cv7166, doc. 73 (N.D. Cal.

Feb. 25, 2019) (motions for sanctions and to disqualify counsel for contact non-party potential witnesses); *Oliver v. Luner, et al.*, CV 2:18-2562, doc. 81 (C.D. Cal. Jul. 24, 2018) (motion for sanctions against defendant for allegedly filing a fabricated letter), *denied* doc. 88 at 16–17 (C.D. Cal. Aug. 3, 2018); *Luner,* CV2:18-2562, doc. 81 (C.D. Cal. Jun. 25, 2018) (motion for sanctions alleging that defendants filed falsified documents offered in support of a motion to dismiss and challenging defendants' characterization of plaintiff as a vexatious litigant); *Oliver v. Oceanside, et al*, CV3:16-565, doc. 38 (S.D. Cal. Jul. 25, 2016) (motion to disqualify city attorney and city attorney's office for alleged fraud and perjury); *Oliver v. CMRE Fin. Servs., Inc.*, CV2:15-8174, doc. 12 (C.D. Cal. Nov. 12, 2015) (motion to disqualify counsel alleging a conflict of interest and violation of discovery rules). The Court is unaware of any instance in which his prior filing of such motions resulted in the relief Oliver requested. Rather, they have been universally recognized as inappropriate and abusive. *See, e.g, Luner*, CV 2:18-2562, doc. 99 at 1–2 (C.D. Cal. Sep. 26, 2018) (order) (citing Oliver's "abuse of Defendant and Defendant's counsel throughout this litigation, as well as [his] history of filing baseless lawsuits in federal and state court" as grounds for

directing him to show cause why he should not be deemed a vexatious litigant). This Court has previously imposed sanctions upon Oliver for similar conduct.[5] *See Cnty. Of Chatham*, CV4:17-101, doc. 188 (S.D. Ga. Mar. 27, 2018) (requiring Oliver to include a certification with and statement of specific support fact with any allegation of fraud or misconduct raised against opposing counsel). Despite this, plaintiff persists in his vexatious and abusive tendencies.

Oliver also routinely files partial voluntary dismissals of his claims. *See Oliver v. City of Pooler, et al.*, CV4:18-100, doc. 53 at 6 (S.D. Ga. Jan. 29, 2019) (admonishing Oliver for pattern of partial dismissals); *Oliver v. Cnty. of Effingham*, CV4:18-120, doc. 58 (S.D. Ga. Jan. 29, 2019) (same); In some instances, the dismissals appear to be a transparent effort to avoid the negative consequences of his misconduct or to coerce conduct from an opposing party. *See, e.g., Oliver v. Lyft, Inc.*, CV4:19-063, doc. 114 (S.D. Ga. Sep. 25, 2019) (notice of voluntary dismissal filed shortly after the Court recommended that filing restrictions be imposed); *Cnty.*

---

[5] This did not deter Oliver's behavior, as he was subsequently sanctioned for not abiding by the imposed requirements. *Oliver v. Cnty. of Chatham, et al.*, CV4:17-101, doc. 220 (S.D. Ga. May 31, 2018) (dismissing case for failure to comply with the Court's sanctions).

*of Chatham*, CV4:17-101, doc. 50 (S.D. Ga. Aug. 9, 2017) (notice dismissing a party in their individual capacity but refusing to dismiss them in their official capacity until they produce requested recordings). In multiple instances, he has subsequently attempted to withdraw the notice of dismissal. *See, e.g.*, *Cnty. of Effingham*, CV4:18-120, doc. 47 (S.D. Ga. Aug. 14, 2018) (motion to unilaterally withdraw a stipulated dismissal). In one particularly egregious case, Oliver filed a notice of withdraw of his voluntary dismissal more than six months after the case was closed. *Oliver v. Nexstar Broadcasting, Inc.*, CV4:20-140, doc. 19 (S.D. Ga. Jul. 8, 2021) (notice of withdrawal of notice of dismissal). This practice serves little purpose beyond frustration. *See, e.g.*, *Anderson v. Cox Comm. Georgia, LLC*, CV4:16-255, doc. 21, (S.D. Ga. Jan 9, 2017) (order to show cause issued after Oliver voluntarily dismissed his individual claims against all defendants directing co-defendant to notify the Court what claims, if any, remain).

At his request, the Court reconsidered the appropriateness and necessity of his filing restrictions during his period of incarceration. Believing the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321-71, and its prior warnings to be an adequate deterrent, it

acceded to the request. Rather than taking this opportunity to demonstrate his ability to litigate this case responsibly, Oliver has merely returned to his old patterns. Only four months after the Court loosened its restrictions, Oliver filed his motion seeking to sanction Ameris for an illusory motion that was never filed. Doc. 66. He later filed a notice seeking to dismiss his remaining claims.[6] Doc. 74. He has once again abused the resources and patience of this Court and now seeks to walk away, apparently, to avoid the consequences of his behavior.

It also appears that Oliver has actively tried to deceive the Court. In accusing his opposing parties and counsel of misconduct, Oliver has routinely stated that the "[d]uty of candor . . . [is] essential to preserving the public confidence in our system of justice." Doc. 66 at 2; *see also Chatham Cnty.*, CV4:17-101, doc. 35 at 4 (S.D. Ga. Jul. 27, 2017) (motion for sanctions) ("Duty of candor, these three words are essential to preserving the public confidence in our system of justice."); *Lyft, Inc.*, CV

---

[6] The Court will not rule on Oliver's notice of dismissal at this time; however, on cursory review it appears deficient. Four defendants remain in this case—Ameris, Chex, Experian, and Equifax. As two of these defendants have filed Answers— Experian, doc. 6, and Ameris, doc. 35—the notice of dismissal must include a stipulation of dismissal signed by at least these those parties, if not all remaining defendants. Fed. R. Civ. P. 41(a)(1)(A)(ii). To date, only Ameris has provided a stipulation of dismissal. Doc. 74.

3:18-7166, doc. 59 at 4 (N.D. Cal. Feb. 13 2018) (motion for sanctions) (same).  It is now clear that these lofty proclamations lacked personal conviction, as Oliver has not been forthcoming with this Court.

In issuing the Order that amended Oliver's filing restrictions, the Court expressly noted that it was not necessary to determine if the limitations 28 U.S.C. § 1915(g) would serve as a bar to cases removed from state courts, like the instant matter, because the Court understood Oliver to have not accumulated three prior qualifying dismissals.  Doc 48 at 2.  Since the issuance of that Order, the Court has identified four cases that qualify as strikes under § 1915(g): *Oliver v. Gore, et al.*, CV3:09-2505 (S.D. Cal. May 12, 2010); *Oliver v. Reays Ranch Investors, et al.*, CV4:10-158 (D. Ariz. Mar. 15, 2010); *Oliver v. Sloane, et al.*, CV4:10-169 (D. Ariz. Mar. 24, 2010); and *Oliver v. Monson*, CV0:10-4218 (D. Minn. Jan. 3, 2011).  The Court is also confident that Oliver was aware of his status under § 1915(g) at the time of the Court's Order but took no steps to correct the record.

In *Oliver v. Gore*, Oliver, while incarcerated at Donovan State Prison in San Diego, California, brought a civil suit under 42 U.S.C. § 1983 against various prison employees alleging excessive force, denial

of equal protection, and denial of adequate medical care during his incarceration. *Gore*, CV3:09-2505, doc. 1 (S.D. Cal. Nov. 5, 2009) (Complaint); *Gore*, CV3:09-2505, doc 15 (S.D. Cal. Mar. 22, 2010) (Second Amended Compliant). The case was dismissed for failure to state a claim on which relief could be granted. *Gore*, CV3:09-2505, doc 19 (S.D. Cal. May 11, 2010) (Order Dismissing). In dismissing the case, the court expressly found that the dismissal constituted a strike under § 1915(g). *Id.*

While incarcerated in California, Oliver filed two cases in the District of Arizona. In *Oliver v. Reays Ranch Investors*, he brought a § 1983 suit against a former employer that accused him of stealing and terminated his employment. *Reays Ranch Inv'rs*, CV4:10-158, doc. 1 (D. Ariz. Mar. 15, 2010) (Complaint); *Reays Ranch Inv'rs*, CV4:10-158, doc. 21 (D. Ariz. Jun. 28, 2010) (Second Amended Complaint). Claiming indigency due to his incarceration, he was permitted to proceed *in forma pauperis*. *Reays Ranch Inv'rs*, CV4:10-158, doc. 2 (D. Ariz. Mar. 15, 2010) (IFP Motion noting incarceration status); *Reays Ranch Inv'rs*, CV4:10-158, doc. 17 (D. Ariz. Jun. 2, 2010) (Order Granting IFP). The complaint was dismissed for failure to state a claim as the named defendants were

not subject to suit under § 1983, which creates liability only for state-actors. *Reays Ranch Inv'rs*, CV4:10-158, doc. 22 (D. Ariz. Jul. 19, 2010) (Order Dismissing). The dismissal order and judgment noted that the dismissal may constitute a strike under § 1915(g). *Id.*; *Reays Ranch Inv'rs*, CV4:10-158, doc. 22 (D. Ariz. Jun. 28, 2010).

Similarly, in *Oliver v. Sloane*, Oliver brought a § 1983 suit against a different former employer, alleging that the employer took possession and disposed of his property following his arrest. *Sloane*, CV4:10-169, doc. 1 (D. Ariz. Mar. 24, 2010) (Complaint); *Sloane*, CV4:10-169, doc. 15 (D. Ariz. May 28, 2010) (Second Amended Complaint). As in *Oliver v. Reays Ranch Investors*, the complaint was dismissed for failure to state a claim on which relief could be granted because § 1983 does not provide a cause of action against non-state actors. *Sloane*, CV4:10-169, doc. 17 (D. Ariz. Jun. 8, 2010) (Order Dismissing). The court's order and judgment again noted that the dismissal may qualify as a strike under § 1915(g). *Id.*; *Sloane*, CV4:10-169, doc. 18 (D. Ariz. Jun. 8, 2010).

Following the dismissal of his California and Arizona cases, Oliver turned his attention to the District of Minnesota. In *Oliver v. Monson*, he alleged that following a domestic altercation with his then girlfriend

"Crystal," he was arrested. *Monson*, CV0:10-4218, doc. 1 (D. Minn. Oct. 12, 2010) (Complaint). During the period in which he was in custody, Crystal, her sister, and the sister's boyfriend wrote several bad checks at various businesses around Cambridge, Minnesota in Oliver's name. *Id*. Oliver brought what was characterized as a § 1983 civil rights suit against twenty-four defendants allegedly connected to the check fraud and his subsequent efforts to resolve the matter. *Id*. The complaint was dismissed for plaintiff's failure to state a claim on which relief could be granted, as he failed to identify a specific cause of action or conduct by any defendant that might be viewed as a violation of a Constitutional or statutory right. *Monson*, CV0:10-4218, doc. 8 (D. Minn. Dec. 30, 2010) (Order Dismissing) *adopting Monson*, CV0:10-4218, doc. 4 (D. Minn. Nov. 3, 2010) (Report and Recommendation). As with the California and Arizona actions, the court expressly noted the relevance of the dismissal under § 1915(g). *Monson*, CV0:10-4218, doc. 8 (D. Minn. Dec. 30, 2010) (Order Dismissing); *Monson*, CV0:10-4218, doc. 9 (D. Minn. Jan. 3, 2011) (Judgment).

Oliver is presumed to have knowledge of these dismissals as he was a party to each case. Even if he did not appreciate the California and

Minnesota courts' identification of strikes, his status under § 1915(g) provided grounds for the dismissal of two cases within the previous two years, including one that involved several overlapping claims and parties with the instant matter. *See Oliver v. Kemp*, CV1:19-5014, doc. 6 (N.D. Ga. Dec. 12, 2019) (order dismissing complaint based on Oliver having accumulated three-strikes under § 1915(g)); *Oliver v. Chex Sys, Inc., et al.*, CV3:20-030, doc. 12 (N.D. Ga. Apr. 21, 2020) (same). In one of these cases, Oliver filed an objection acknowledging the prior dismissal and objecting to his status as a three-striker. *Chex Sys, Inc., et al.*, CV3:20-030, doc. 11 (N.D. Ga. Apr. 11, 2020) (objection to report and recommendation). Oliver contested that he was the plaintiff in each of the cited cases. *Id*. The Court overruled Oliver's objection, noting its "confiden[ce] that [he] has run afoul of the three strikes provision . . . ." CV3:20-030, doc. 12 at 6 (N.D. Ga. Apr. 21, 2020). A cursory review of the pleadings in each case reveals that the Northern District's confidence was not misplaced.

In *Oliver v. Monson*, the plaintiff alleges that he moved to Minnesota with his girlfriend "Crystal" and their two children where he was arrested for an act of domestic violence. CV0:10-4218, doc. 1 at 10

(D. Minn. Oct. 10, 2010). This is consistent with the facts alleged in a recent appeal filed by Oliver in the Georgia state courts. *See Oliver v. Field*, 353 Ga. App. 891, 892, 894 (Ga. Ct. App. 2020) (noting that Oliver and "Crystal" "have two children together" and that he "followed [Crystal] to Minnesota where additional acts of domestic violence were committed"). The address and prisoner identification number provided by the plaintiff in *Oliver v. Monson* is identical to that used by the plaintiffs in the other cases. *Compare Monson*, CV0:10-4218, doc. 1 at 1 (D. Minn. Oct. 13, 2010) (providing prisoner number AA-9551 and a post office box at the California Correctional Institution in Tehachapi, California) *with Gore, et al.*, CV3:09-2505, doc. 16 (S.D. Cal. Apr. 26, 2010) (change of address providing same prisoner number and mailing address); *and Reays Ranch Inv'rs*, CV4:10-158, doc. 13 (D. Ariz. May 13, 2010) (same) *and Sloane*, CV4:10-169, doc. 9 (D. Ariz. Apr. 26, 2010) (same). The Court is confident that Oliver was the plaintiff is each of the cited cases and has knowingly accumulated three-strikes under the § 1915(g).

The Court clearly stated in its January 15, 2021 Order, that consideration of whether the instant case should be dismissed under §

1915(g) was unnecessary because it did not understand Oliver to have accumulated three-strikes. Doc. 48 at 2. Oliver's failure to correct this misunderstanding is tantamount to deceiving the Court through omission. Efforts to deceive or conceal information from the Court are not tolerated and warrant the immediate dismissal of a complaint and other sanction. *Johnson v. Chisolm*, 2011 WL 3319872 at *1 n. 3 (S.D. Ga. Aug. 1, 2011) ("This Court does not hesitate to invoke dismissal and other sanctions against inmates who lie to or otherwise deceive this Court."); *Morefield v. DuPree*, 2008 WL 5100926, at * 3 (S.D. Ga. Dec. 3, 2008) (dismissing action without prejudice where petitioner abused the judicial process by providing dishonest information about his prior filing history); *Gillilan v. Walker*, 2007 WL 842020, at *1 (S.D. Ga. Mar. 15, 2007) (same). Therefore, the Court **RECOMMENDS** that this case be **DISMISSED with prejudice** or, in the alternative, that Oliver's motion to waive the contempt bond be **DENIED**.

It is now clear that the Court's optimistic hope that the Prison Litigation Reform Act would provide an adequate deterrent for Oliver's abusive practices was misplaced. His return to form evidences the need for a more severe sanction. *See Procup v. Strickland*, 792 F.2d 1069,

1073–74 (11th Cir. 1986) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."). Oliver is clearly a vexatious litigant and his continued abuse of the judicial system and opposing parties warrants the most extreme condemnation and action. Therefore, the Court recommends that the following sanctions be imposed in all pending and future civil cases filed by Oliver in this district.[7]

1. The Clerk of Court shall open a miscellaneous file into which all of Oliver's future filings shall be collected. The presiding judge shall review the filings. Only those complaints that allege a plausible claim for relief will be approved for filing. All other cases will be dismissed without any further judicial action after 30 days from the

---

[7] The Court has imposed such restrictions on vexatious litigants in the past. *See Drake v. 7-Eleven*, 2020 WL 4196189 (S.D. Ga. June 26, 2020) *adopted by* CV4:19-208, doc 9 (S.D. Ga. July 21, 2020); *Drake v. Travelers Commercial Ins. Co.*, 2020 WL 3452485 (S.D. Ga. May 27, 2020) *adopted by* CV4:20-099, doc. 11 (S.D. Ga. June 24, 2020); *Oliver v. Lyft. Inc.*, CV4:19-063, doc. 113 (S.D. Ga Oct. Sept. 13, 2019) *adopted by Oliver v. Lyft*, 2019 WL 5390012 (S.D. Ga. Oct. 21, 2019); *Williams v. Darden*, 2016 WL 6139926 (S.D. Ga. Oct. 21, 2016); *Fields v. Terminal*, 2016 WL 823020 (S.D. Ga. Feb. 26, 2016); *Hurt v. Zimmerman*, CV415-260, doc. 3 (S.D. Ga. Oct. 7, 2015); *Robbins v. Universal Music Grp.*, 2015 WL 171443 (S.D. Ga. Jan. 13, 2015); *Finch-Grant v. Long*, 2014 WL 3888124 (S.D. Ga. Aug. 6, 2014).

date the complaint was received by the Clerk, unless the Court orders otherwise.

Thus, although the Court will read and consider any future complaint that Oliver endeavors to file, it will not necessarily enter an order addressing that complaint. If no order is forthcoming, then 30 days after the complaint's receipt, the Clerk shall, without awaiting any further direction, notify Oliver that the case has been dismissed without prejudice. The Clerk shall not docket any further motions or papers in that case except for a notice of appeal. If a notice of appeal is filed, the Clerk shall forward a copy of this Report and Recommendation, the Order adopting, the notice of appeal, and the dismissed Complaint to the Court of Appeals.

2. To ensure that all of Oliver's future pleadings are properly consolidated for review, the Clerk shall personally advise each deputy clerk of the Court's ruling in this case and develop a procedure for ensuring that all of Oliver's future complaints are immediately assigned and forwarded to the presiding district judge in this case, regardless of which divisional clerk's office received and docketed the papers.

3. In any case approved for filing, Oliver must post a $1,000 contempt bond with the Clerk of Court. The bond will be held by the Clerk of Court and returned to Oliver at the conclusion of the case, if he conducts his affairs appropriately. During the period of his incarceration, Oliver is also subject to the provisions and restrictions of the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321-71;

4. Oliver may file a motion to modify or rescind the order imposing these restrictions no earlier than two years from the date of its entry;

5. These filing restrictions do not apply to any criminal case in which Oliver is named as a defendant, or to any proper application for a writ of habeas corpus.

6. A copy of the order imposing these restrictions shall be forwarded to each judicial officer in this District.

## CONCLUSION

In summary, the Court **VACATES** its Report and Recommendation of March 15, 2021. Doc. 54. Oliver's motion to strike, doc. 41 and motion to stay, doc 58, are **DENIED**. Defendants' motion to stay is **DENIED**.

Doc. 42. Oliver's motions for service by the United States Marshal Service and to transfer venue are deemed **WITHDRAWN**. Docs. 19 & 39. The Court **RECOMMENDS** that Oliver's motions to amend, docs. 40 & 52, and motion for waiver of his contempt bond, doc. 70, be **DENIED**. It further **RECOMMENDS** that this case be **DISMISSED** and the above described restrictions be imposed as a sanction for Oliver's persistent abusive conduct.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are

advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 16th day of July, 2021.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA